UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MONICA KRON
O/B/O J.S. JR.,

                              Plaintiff,

v.                                                                    CASE # 18-cv-01459

COMMISSIONER OF SOCIAL SECURITY,

                               Defendant.

---

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LAW OFFICES OF KENNETH HILLER, PLLC<br>  Counsel for Plaintiff<br>600 North Bailey Ave<br>Suite 1A<br>Amherst, NY 14226 | CRANDI CHRISTINE<br>SMITH, ESQ.<br>KENNETH R. HILLER, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL – REGION II<br>  Counsel for Defendant<br>26 Federal Plaza – Room 3904<br>New York, NY 10278 | KRISTIN M. ROGERS, ESQ.<br>VERNON NORWOOD, ESQ. |

J. Gregory Wehrman, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

The parties consented in accordance with a standing order to proceed before the undersigned. The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Upon review of the administrative record and consideration of the parties' filings, the Plaintiff's motion for judgment on the administrative

record is **DENIED**, the Defendant's motion for judgment on the administrative record is **GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

I.   **RELEVANT BACKGROUND**

   A.   **Factual Background**

J.S. Jr. was born on October 21, 2006. (Tr. 217). At the time of the hearing, he was 10 years old and in the sixth grade. (Tr. 39). The alleged disability onset date is November 19, 2014.

   B.   **Procedural History**

On November 20, 2015, Plaintiff protectively filed an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act on J.S. Jr.'s behalf (Tr. 195). Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On October 10, 2017, Plaintiff appeared before the ALJ, William M. Weir. (Tr. 37-62). On November 27, 2017, ALJ Weir issued a written decision finding Plaintiff not disabled under the Social Security Act. (Tr. 15-30). On October 16, 2018, the Appeals Council ("AC") denied Plaintiff's request for review. (Tr. 1-6). The ALJ's decision became the Commissioner's decision and Plaintiff subsequently filed a federal action on J.S. Jr.'s behalf.

   C.   **The ALJ's Decision**

Generally, in his decision, ALJ Weir made the following findings of fact and conclusions of law:

> 1. The claimant was born on October 21, 2006. Therefore, he was a school-age child on November 20, 2015, the date application was filed, and is currently a school-age child (20 CFR 416.926a(g)(2)).
>
> 2. The claimant has not engaged in substantial gainful activity since November 20, 2015, the application date (20 CFR 416.924(b) and 416.971 et seq.).

3. The claimant has attention deficit hyperactivity disorder (ADHD), which constitutes a severe impairment (20 CFR 416.924(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).

5. The claimant does not have an impairment or combination of impairments that functionally equals the severity of the listings (20 CFR 416.924(d) and 416.926a).
    (a) The claimant has less than marked limitation in acquiring and using information.
    (b) The claimant has less than marked limitation in attending and completing tasks.
    (c) The claimant has less than marked limitation in interacting and relating with others.
    (d) The claimant has no limitation in moving about and manipulating objects.
    (e) The claimant has no limitation in the ability to care for himself.
    (f) The claimant has no limitation in health and physical well-being.

6. The claimant has not been disabled, as defined in the Social Security Act, since November 20, 2015, the date the application was filed (20 CFR 416.924(a)).

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes essentially two arguments in support of his motion for judgment on the pleadings. First, plaintiff argues the ALJ's domain findings were not supported by substantial evidence. (Dkt. No. 10 at 12 [Pl.'s Mem. of Law]). Second, the ALJ improperly rejected evidence submitted in accordance of the five business-day rule. (Dkt. No. 10 at 19).

### B. Defendant's Arguments

In response, defendant makes two arguments. First, defendant argues the ALJ properly evaluated and weighed the opinions in the record in assessing the level of limitation in each of the six functional domains. (Dkt. No. 12 at 9 [Def.'s Mem. of Law]). Second, any error in not considering evidence submitted after the hearing is harmless error because the evidence does not undermine the substantial evidence supporting the ALJ's decision. (Dkt. No. 12 at 13).

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's

independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.     Standard to Determine Disability**

To be "disabled" within the meaning of the Act, a child must show he or she has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations," and which either lasts or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(C)(I).

A three-step sequential evaluation process determines whether a supplemental security income claimant under the age of 18 is disabled. 20 C.F.R. § 416.924(a). At the first step, the ALJ determines whether the child has engaged in substantial gainful activity during the relevant period. 20 C.F.R. § 416.924(b). If so, the child is not disabled; if not, the evaluation continues to the next step. At the second step, the ALJ determines whether the child has a "severe" impairment, or combination of impairments – i.e., a slight abnormality or combination of slight abnormalities that causes more than minimal functional limitations. 20 C.F.R. § 416.924(c). If not, the ALJ denies the application; otherwise, the evaluation continues.

At step three of the sequential evaluation process, the ALJ determines whether a child's impairments meet, medically equal, or functionally equal the severity of one of the Commissioner's listed impairments (Listings). 20 C.F.R. §§ 416.924(a), (d). If not, the child is not disabled. 20 C.F.R. § 416.924(d). As part of the step three analysis, if the ALJ finds that a child's impairments do not meet or medically equal a listed impairment, the ALJ assesses all functional

5

limitations using six "domains" of functioning to determine whether the child's symptoms are functionally equivalent to the listed impairments. 20 C.F.R. § 416.926a. The six domains of functioning include: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). The evaluation of age-appropriate functioning within each domain focuses on the child's abilities and limitations; where the child has difficulty; the quality of any limitations; and the kind, extent, and frequency of help that the child needs. 20 C.F.R. § 416.926a(b)(2). A finding of functional equivalence occurs when a child has an "extreme" limitation in one of the six domains of functioning or "marked" limitations in at least two domains. 20 C.F.R. § 416.926a(e).[1]

## IV. ANALYSIS

### A. Substantial Evidence

Plaintiff argues that the ALJ's findings regarding functional equivalence are not supported by substantial evidence. (Dkt. No. 10 at 12). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue,* 569 F.3d 108, 112 (2d Cir. 2009). More specifically, plaintiff argues the ALJ rejected all opinion evidence based on his lay opinion and made findings that were based on his lay interpretation. (*Id*.). Plaintiff cites opinions from J.S. Jr.'s teacher Ms. Gallegos, consultative examiner Dr. Zali, and state agency consultant Dr. Juniga. (Tr. 111, 235-39, 295).

---

[1] "Extreme" means a child has an impairment that very seriously interferes with a child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e). "Marked" indicates that he or she has an impairment that seriously interferes with the ability for independently initiating, sustaining, or completing activities. *Id*.

On January 6, 2015, J.S. Jr.'s fourth grade teacher Shandra Gallegos completed a teacher questionnaire based upon her four months of teaching J.S. Jr. (Tr. 234-241). She opined J.S. Jr. had "very serious" problems with tasks in the domains of acquiring and using information, attending and completing tasks, interacting and relating with others and caring for self. (Tr. 235-240). On March 3, 2016, J.S. Jr. underwent a consultative child psychiatric evaluation by Dr. Gina Zali. (Tr. 292-295). Dr. Zali opined J.S. Jr. had marked limitations with interacting adequately with peers and interacting adequately with adults, as well as moderate limitations adequately maintaining appropriate social behavior and being aware of danger and taking needed precautions. (Tr. 295). On March 15, 2016, non-examining state agency review physician S. Juriga opined J.S. Jr. had a marked limitation in interacting and relating with others no limitations in acquiring and using information, attending and completing tasks, moving and manipulating objects, caring for self, and health and physical well-being. (Tr. 111).

An ALJ must consider numerous factors when evaluating a doctor's opinion, including whether the doctor examined the claimant, whether the doctor treated the claimant, whether the doctor presents evidence to support his or her opinion, and whether the doctor's opinion is consistent with the record as a whole. *See* 20 C.F.R. § 416.927(c). A treating doctor's opinion generally is entitled to more weight, and an ALJ must give good reasons for the weight given a treating doctor's opinion. *See* 20 C.F.R. § 416.927(c). An ALJ, however, may discount a doctor's opinion, including a treating doctor's opinion, when the opinion is conclusory, the doctor fails to provide objective medical evidence to support his or her opinion, or the opinion is inconsistent with the record as a whole. *See* 20 C.F.R. § 416.927(c). In this case, the ALJ gave each opinion little weight citing inconsistencies with the evidence of record as well as other reasons which were

supported by substantial evidence. Accordingly, the Court finds the ALJ properly evaluated all three opinions in his decision.

In his decision, the ALJ first considered and weighed the teacher questionnaire from Ms. Gallegos. (Tr. 29). The ALJ properly concluded that although not an acceptable medical source, she observed J.R. Jr. on a daily basis but the severity of limitations was inconsistent with the record as a whole. *See* SSR 06-03p, 2006 WL 2329939 (August 9, 2006) (noting that information from "other sources," including teachers, are "valuable sources of evidence for assessing impairment severity and functioning," and that the ALJ "generally should explain the weight given to opinions from [] 'other sources'"). Accordingly though, the ALJ noted improvement in J.R. Jr.'s abilities shown in subsequent educational records and medical records. School records indicate a psychological evaluation by a school psychologist was not done until almost two weeks after the questionnaire on January 25, 2016. (Tr. 307-311). The implementation of an Individualized Education Plan (IEP) wasn't completed until a month after Ms. Gallegos opinion and ensuing school records documented J.R. Jr.'s academic and social improvement with those services. (Tr. 29). The ALJ's repeated reference and reliance on school records that showed progress and improvement was not an error. The fact that J.R. Jr. can identify isolated treatment notes or evidence that which are inconsistent with the ALJ's determination, does not detract from substantial evidence supporting the ALJ's findings. *See Cage v. Comm'r of Soc. Sec*., 692 F.3d 118, 127 (2d Cir. 2012) (substantial evidence so deferential "that there could be two contrary rulings on the same record and both may be affirmed as supported by substantial evidence."). But for instance, the February 2016 IEP directed integrated co-teaching services for two and a half hours a day plus a behavior modification program. (Tr. 316-317). At the end of that school year, on the report card "work habits and social development" it was noted for Term 2 that there had

recently been improvement and at the end of Term 3 he was completing most his work in the classroom but was encouraged to slow down and self-check his work carefully. (Tr. 304). Continued difficulties with staying seated, focusing on his reading during independent reading time, and completing a nightly reading log were noted. (Tr. 303). J.R. Jr. however continued to make significant progress socially and in September 2017 he was noted to be making good choices in the classroom. (Tr. 332). J.R. Jr.'s most recent report card from the 2016-2017 school year indicates J.R. treated everyone with respect. (Tr. 329-30).

The teacher's opinion of significant limitations in acquiring and using information and attending and completing tasks are inconsistent with the school psychologist's evaluation that showed average intelligence and the consultative psychologist's exam that showed intact attention and concentration and only mildly impaired memory, as well as the IEP reports indicating continued improvement in J.R. Jr.'s reading and other abilities. (Tr. 313-37). The teacher's opinion of serious problems in caring for himself are inconsistent with observations that he had good grooming, he could dress and bath independently, and had the ability to enjoy activities and play with friends. (Tr. 235-39). The ALJ specifically noted there was a lack of evidence to support claims of self-injurious and criminal behavior. (Tr. 27). Although plaintiff argues the omitted records would provide this evidence, as discussed further below, that is not likely. Ultimately it is the plaintiff's burden to "prove to [the Social Security Administration] that [he is] blind or disabled." 20 C.F.R. §§ 404.1512(a), 416.912(a).

Plaintiff cites the May 2016 IEP as supporting the argument that there was not improvement. However, this IEP meeting took place a mere three months after the initial IEP implementation and relied on the January 2016 reports and testing. (Tr. 321). Further, arguments that the ALJ ignored the effects of a structured or highly supportive setting are not persuasive.

(Dkt. No. 10 at 15). The regulations state that IEPs can provide useful information about a child's functioning and can help an ALJ determine if a child has marked and severe functional limitations but are not to determine disability. SSR 09-2p. (S.S.A. Feb. 18, 2009). In regard to classroom placements, there is a continuum of alternative placements including regular classrooms, "pull-out" services, special education classrooms, alternative schools, day treatment programs and residential schools. (*Id.*). In this case, the child is in regular education and a regular classroom setting. (Tr. 313-337). The IEP notes J.S. Jr. received teacher devised tests and worksheets, writing samples, a behavior chart, and he received integrated co-teaching services within his regular classroom one time a day for two and a half hours (Tr. 316). The case before the Court is distinguishable from the case cited by plaintiff where the child was in an alternative school environment with social workers, therapists, and teachers only designed for special education students. *See Williams ex rel. D.A.W. v. Astrue*, No. 08 Civ. 6375 (LBS), 2009 WL 3754391, at *9 (S.D.N.Y. Nov. 5, 2009).

In addition to the non-medical source opinion from Ms. Gallegos, the ALJ also properly considered and weighed the opinions from Dr. Jurgia and Dr. Zali. While it is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, medical source opinions that are "conclusory, stale, and based on an incomplete medical record" are not substantial evidence. *Griffith v. Astrue,* No. 08–CV–6004, 2009 WL 909630, at *9 n. 9 (W.D.N.Y. March 31, 2009). *See also* 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(e). In this case, the opinions of Dr. Jurgia and Dr. Zali were rendered prior to the effects of ongoing medication and academic intervention and are not supported by substantially similar findings in treatment notes or other opinions in the record. *Camille v. Colvin,* No. 14–CV–6155 EAW, 104 F.Supp.3d 329, 343–44, 2015 WL 2381030, at *13 (W.D.N.Y. May

19, 2015). The ALJ cited examples of inconsistencies with Dr. Zali's opinion, particularly with the marked limitations in interacting adequately with peers and adults when stating which parts of the opinion were rejected. (Tr. 28). The ALJ noted that when plaintiff first reported J.S. Jr.'s symptoms in 2014, she reported symptoms without medication were only moderate in nature and within a short time on medication, plaintiff reported "dramatic improvement in his behavior." (Tr. 28, 281). Also, as discussed above, school records initially documented inappropriate interactions with peers and adults, a tendency to "shut down" and refuse to work, but later observations showed J.S. Jr. made significant progress socially and in September 2017 he was making good choices in the classroom. (Tr. 332). J.S. Jr.'s most recent report card from the 2016-2017 school year indicates J.S. Jr. treated everyone with respect (Tr. 329-330). The opinions from Dr. Zali and Dr. Jurgia were in March and May 2016, respectively and therefore did not reflect the positive changes from medication and the school IEP services.

The ALJ's consideration of evidence of improvement after J.S. Jr. was placed on medication and received special education services was necessary. "All of the relevant evidence" to be considered in making a finding about disability includes how the child functions over time and across settings. *See SSR* 09-2p, 2009 WL 396032 (S.S.A. 2009). Consistent with prior case law, this Court finds that substantial evidence in the record supports the ALJ's determinations even though not every piece of evidence supports the ALJ's findings. *See Biestek v. Berryhill*, 139 S. Ct. 1148 (2019); *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012). Although J.S. Jr. records may have some evidence contrary to the ALJ's determination, that does not detract from substantial evidence support the ALJ's findings. *See Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 127 (2d Cir. 2012) (substantial evidence so deferential "that there could be two contrary rulings on the same record and both may be affirmed as supported by substantial evidence.").

11

### B. Additional Records

Plaintiff also contends the ALJ erred in not considering evidence that was provided to the ALJ after the hearing. (Dkt. No. 10 at 19-22). The Commissioner conceded that the record contains a letter alerting the ALJ about missing evidence that would be provided later. (Tr. 269-270). Therefore, it was an error for the ALJ to determine the evidence was not submitted in compliance with the regulations. See 20 C.F.R. § 416.1435(a). This error however is harmless.

The record contains the evidence plaintiff contends was submitted to the ALJ and not considered. (Tr. 63-105). However, this evidence is not significantly different than the evidence considered by the ALJ. Plaintiff argues only that these records corroborated testimony of self-injurious behaviors. (Dkt. No, 10 at 21). The cited hospital record from November 7, 2015, however, does not find that J.S. Jr. injured himself, only plaintiff's report that she thought that is what happened because there was no blood on the floor when he said he fell. (Tr. 87-88). Records show he was treated and released within a few hours with no psychiatric intervention or follow-up to plaintiff's assertion. (*Id.*). When compared to records before the ALJ, at a visit to the pediatrician in December 2015, Plaintiff had no behavior related concerns with J.S. Jr. (Tr. 21, 288). Submitted records also included a mental health serious emotional disturbance checklist from August 2017, completed by treating therapist Loarraine Wright, LCSW-R. (Tr. 100). The check-box form stated J.S. Jr. had a "high" impairment with family life and self-direction/self-control and "moderate" impairment in social relationships and learning ability. (Tr. 100). It also noted he had serious suicidal symptoms or other life-threatening self-destructive behaviors, behavior caused by emotional disturbances that placed him a risk of causing personal injury or significant property damage, and behavior caused by emotional disturbances that placed the child at substantial risk of removal from the household. (Tr. 100). There is no narrative or supporting evidence for these

limitations. Plaintiff's argument that one of the assessments from July 2017 states J.S. Jr. had continued conflict with his siblings is not inconsistent or different from the evidence already before the ALJ.

Plaintiff's argument in her reply, that remand is required for proper consideration of credibility, is also not persuasive. (Dkt. No. 13 at 2). Under the domain of ability to care for self, the ALJ stated the reports pertaining to self-injurious behavior and criminal behavior were unsupported by the record with no documentation of such instances. (Tr. 27). As stated above, there is no medical evidence or documentation from an acceptable medical source that details examples of J.S. Jr's self-injurious behavior or criminal behavior in the omitted records. Plaintiff's assertion that the "ALJ relied significantly on the alleged absence of this evidence" is overstating how the ALJ used that information. The case cited by plaintiff is not on point because that case had missing educational records and the ALJ repeatedly cited the lack of updated school records or IEP services in denying the claim. *See Caldwell o/b/o J.W. v. Berryhill*, 2018 WL 1081009, at *4 (W.D.N.Y. Feb. 28, 2018). As stated above, plaintiff still has not presented any evidence that corroborated testimony of self-injurious behaviors, especially not to the degree of being an extreme limitation in the domain of caring for self, which is what would be required to find functional equivalence in this case given the other findings of less than marked or no limitations in the other domains. Thus, any error by the ALJ in not properly accepting and considering the records produced after the hearing is at most a harmless error. *See Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (declining to remand where "application of the correct legal principles to the record could lead [only to the same] conclusion).

**ACCORDINGLY, it is**

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 12) is **GRANTED**.

Dated: February 24, 2020  
Rochester, New York

*J. Gregory Wehrman*  
HON. J. Gregory Wehrman  
United States Magistrate Judge